IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

|  |  |
|---|---|
| TIMMY LEE MOSIER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:20-cv-02197-JDB-tmp |
| ) | |
| JOSEPH EVANS and CROCKETT ) | |
| COUNTY, TENNESSEE, ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is the September 29, 2022, motion of Defendants, Joseph Evans and Crockett County, Tennessee, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, on the claims brought by Plaintiff, Timmy Lee Mosier. (Docket Entry ("D.E.") 69.) Plaintiff responded (D.E. 82), Defendants replied (D.E. 93), and Plaintiff submitted a sur-reply. (D.E. 98.)

## PROCEDURAL HISTORY

Mosier filed his complaint in the Circuit Court of Crockett County on February 20, 2020, alleging both state law and federal civil rights law claims. (D.E. 1-2.) Specifically, Plaintiff asserted common law tort claims, Tennessee state negligence claims under the Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101 *et seq.*, and federal civil rights claims pursuant to both the Civil Rights Act of 1866, 42 U.S.C. §§ 1983, 1988 and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. (D.E. 1-2 at PageID 10.) On March 17, 2020, counsel for Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441. (D.E. 1.)

On July 29, 2020, the Court granted Defendants' partial motion to dismiss (D.E. 7) and dismissed Mosier's state-law negligence claims. (D.E. 14.)

## STANDARD OF REVIEW

Rule 56 provides in relevant part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of a material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Edu. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)).

At summary judgment, a plaintiff "can no longer rest on allegations alone[.]" *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1148 (6th Cir. 2022) (internal quotation marks omitted), *reh'g en banc denied*, 2022 WL 2914586 (6th Cir. July 18, 2022). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "[I]n order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support [his] position; a mere 'scintilla of evidence' is insufficient." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)).

"To the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541 (6th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "To the extent that facts shown in videos can be interpreted in multiple ways or if videos do not

2

show all relevant facts, such facts should be viewed in the light most favorable to the non-moving party." *Id.* (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).   "The moving party is entitled to summary judgment when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 859 (6th Cir. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted), *reh'g en banc denied* (July 1, 2020).

## UNDISPUTED FACTS

The following material facts are undisputed unless otherwise noted.  On March 2, 2019, Evans, a deputy at the Crockett County Sheriff's Office, arrested Mosier for public intoxication. (D.E. 1-2.)  Prior to his arrest, Plaintiff had consumed over fourteen beers, at least one shot of whiskey, and smoked marijuana.  (D.E. 83-1 at PageID 820-23, 859-60.)   At the time of arrest, Plaintiff was intoxicated but able to hold himself up and walk.  (*Id.* at PageID 825, 827, 833, 852.) According to the record, officers are trained to interact with intoxicated individuals and often deal with such persons.  (D.E. 83-10 at PageID 1288.)

Following the arrest of Plaintiff, Evans transported him to the Crockett County Jail.  (D.E. 1-2.)  On arrival, Plaintiff exited Defendant's vehicle and entered the booking area.  (D.E. 83-3 at PageID 1053-55.)  Mosier then cursed at the officer, (D.E. 83-1 at PageID 864), and struggled against being escorted by him. (D.E. 70 at 00:07:39-00:07:50; D.E. 83-1 at PageID 867-68; D.E. 83-3 at PageID 1060-67.)  As Defendant led Mosier into the jail, he grasped Plaintiff's overall straps with both hands in response to Plaintiff's active resistance.  (D.E. 70 at 00:07:39; D.E. 83-1 at PageID 921; D.E. 83-3 at PageID 1060.)  What happened next is disputed.  Mosier insists that

Evans "slung [him] to the ground with tremendous force." (D.E. 82-1 at PageID 434.)  In contrast, Defendant maintains that he "intended to use the takedown maneuver to regain control" of Plaintiff without causing him injury. However, Mosier's strap broke resulting in his fall and subsequent injuries.  (D.E. 69-2 at PageID 259-60.)

Shortly thereafter, Evans directed a corrections officer to "get a medic."  (D.E. 70 at 00:08:09; D.E. 83-3 at PageID 1108, 1115-16.)  He then removed Plaintiff's handcuffs and wiped blood from the arrestee's face.  (D.E. 70 at 00:08:10, 00:12:22-00:12:45; D.E. 83-3 at PageID 1107-08, 1119.)  As the paramedics did not immediately arrive, Evans left the booking area to again request assistance.  (D.E. 83-3 at PageID 1120.)  When medical personnel showed up about eight minutes later, the officer informed them that the strap on Plaintiff's clothing broke.  (D.E. 70 at 00:13:07, 00:16:44-52; D.E. 83-3 at PageID 1123-24.)  Evans was concerned that Plaintiff needed hospital attention, (D.E. 83-3 at PageID 1129, 1135; D.E. 83-10 at PageID 1309), and thus, he called his superior, Lieutenant Roy Mosier.  (D.E. 83-3 at PageID 1129; D.E. 83-10 at PageID 1309.)  The lieutenant agreed and another patrol officer transported Plaintiff to a hospital.  (D.E. 83-3 at PageID 1129.)

The Crockett County Sheriff Office's use of force policy provides, in part, that "[u]nnecessary force is defined as any force in excess of that necessary to accomplish a legitimate task." (D.E. 69-8 at PageID 367.).  It further states that, "[a]n officer is never justified in using unnecessary force and can be held criminally as well as civilly liable for his acts. . . . An officer may use physical force not calculated to cause serious physical injury or death, when force is necessary to affect an arrest for a felony or misdemeanor.  The officer can use this type of force to prevent the escape from lawful custody of any subject." (*Id.*)  Lieutenant Mosier conducted an

investigation into the incident concerning Plaintiff and concluded that Evans did not use excessive force against him.  (D.E. 83-10 at PageID 1304-05, 1309-10, 1318-22.)

At all times relevant, Evans was certified by the Tennessee Peace Officers Standards and Training Commission ("POST").  (D.E. 69-7 at PageID 363.)  All full-time Crockett County Sheriff's Office deputies are POST certified and must remain POST certified to continue in their roles as deputies.  (*Id.*)  POST annually approved Crocket County's training on use of force and access to medical care.  (*Id.* at PageID 364.)  Evans received yearly instruction regarding the use of force policy.  (*Id.*; D.E. 83-3 at PageID 1007-08.)  Crockett County Sheriff Office's training, including its training on the use of force, met and complied with POST standards and taught officers how to deescalate volatile situations. (D.E. 69-7 at PageID 364; D.E. 83-10 at PageID 1002.)

## ANALYSIS

1. Plaintiff's Claims Against Evans

Section 1983 provides a "private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983).  To prove a claim under the statute, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Doe ex rel. Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 35 F.4th 459, 468 (6th Cir. 2022) (quoting *Doe v. Miami Univ.*, 882 F.3d 579, 595 (6th Cir. 2018)).

There is no dispute that Evans acted under color of law and thus the Court's inquiry will focus solely upon whether his actions deprived Plaintiff of a constitutional right.  In bringing a

§ 1983 claim, Mosier first alleges that Evans violated his constitutional right to be free from excessive force during arrest.  (D.E. 1-2 at PageID 14-15.)  Because § 1983 does not confer substantive rights, "[i]n addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The Fourth, Eighth, and Fourteenth Amendments each protect individuals against excessive government force and "[w]hich amendment should be applied depends on the status of the plaintiff at the time of the incident . . . ." *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013).  There is no dispute that Mosier was not an inmate at the time of his injury, and thus the Eighth Amendment standard is inapplicable.  *See Colson v. City of Alcoa*, 37 F.4th 1182, 1186 (6th Cir. 2022).  There does appear to be disagreement between the parties as to whether the Fourth or Fourteenth Amendment should govern.

Evans notes that the Sixth Circuit has consistently identified the probable cause determination as the "dividing line" between the two amendments and thus argues that only the Fourth Amendment framework should be applied.  *See id.* at 1187 (quoting *Aldini v. Johnson*, 609 F.3d 858, 865-66 (6th Cir. 2010)); (D.E. 69-1 at PageID 239.)  Mosier, however, insists that "he had a Fourteenth Amendment right not to suffer any punishment while at the Crocket [sic] County Jail."  (D.E. 82 at PageID 408 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).)  In *Kingsley*, the Supreme Court held that Fourteenth Amendment excessive force claims brought by pretrial detainees should be analyzed using only the objective Fourth Amendment standard without consideration of the subjective component in the Eighth Amendment's approach.  *Kingsley*, 576 U.S. at 396-97.  The Court did not consider whether pretrial detainees may bring Fourth Amendment excessive force claims nor did it decide the dividing line between the two

6

amendments in excessive force considerations. *See id.* at 408 (Alito, J., dissenting). Furthermore, other than this statement, Plaintiff's argument employs a Fourth Amendment analysis. Finally, while the Supreme Court has not determined which amendment should protect an individual such as Mosier, the Sixth Circuit applies the Fourth Amendment. *See Colson*, 37 F.4th at 1187. Following Sixth Circuit precedent and the parties' arguments, the Court considers excessive force under the Fourth Amendment standard.

Defendants invoke the defense of qualified immunity, a complete defense both to liability and the suit itself. *See Shumate v. City of Adrian*, 44 F.4th 427, 439-40 (6th Cir. 2022). To determine whether qualified immunity applies, district courts perform a two-pronged analysis viewing the facts alleged and evidence produced in the light most favorable to the party asserting the injury and asking: (1) whether the official's actions violated a constitutional right and (2) whether the right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Burnett v. Griffith*, 33 F.4th 907, 911 (6th Cir. 2022). District courts have discretion in deciding which prong to address first. *Burnett*, 33 F.4th at 911 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Because Evans has asserted qualified immunity, it is Plaintiff's burden to show that the officer is not entitled to it. *Burgess*, 735 F.3d at 472.

a. *Constitutional Violation*

The Fourth Amendment "guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." *Graham*, 490 U.S. at 394 (quoting U.S. Const. amend. IV). Fourth Amendment excessive force claims are evaluated using an "objective reasonableness test" that considers the "totality of the circumstances" without regard to the "intent or motivation of the defendants." *Burgess*, 735 F.3d at 472 (citing *Dunigan v. Noble*, 390 F.3d

7

486, 493 (6th Cir. 2004)).  Applying that test and determining whether a specific use of force is reasonable, "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  This balancing requires the consideration of three non-exclusive factors, often referred to as the "*Graham* factors": "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Shumate*, 44 F.4th at 440 (citing *Graham*, 490 U.S. at 396).[1]  The Sixth Circuit employs a "somewhat narrow interpretation" of the totality of the circumstances approach to reasonableness in excessive force claims.  *Provost v. Crockett Cnty.*, No. 117CV01060STAEGB, 2018 WL 4224907, at *9 (W.D. Tenn. Sept. 5, 2018) (quoting *Claybrook v. Birchwell*, 274 F.3d 1098, 1103 (6th Cir. 2001)).  Under this perspective, known as the "segmenting rule," "a court must 'carve up the events surrounding the challenged police action and evaluate the reasonableness of the force by looking only at the moments immediately preceding the officer's use of force,' an approach that 'applies even to encounters lasting very short periods of time.'"  *Id.* (quoting *Greathouse v. Couch*, 433 F. App'x 370, 372 (6th Cir. 2011)).  Therefore, for Mosier to overcome qualified immunity, he must demonstrate that Defendant's use of force was unreasonable and thus a constitutional violation of his rights.

In discussing the *Graham* factors, Plaintiff contends that Evans's actions "far exceeded the need for the use of force[.]"  (D.E. 82 at PageID 409.)  Mosier further argues that any security

---

[1] Both parties rely on *Kingsley* for recitation of these factors.  (D.E. 69-1 at PageID 239; D.E. 82 at PageID 408.)

problem he exhibited was minimal and that Defendant perceived no threat from an unarmed and restrained arrestee. (*Id.*) Plaintiff primarily relies on Evans's deposition and video footage of the incident to support his claim that the force utilized was unreasonable and excessive. (*Id.* at PageID 409-10.)

In response, Evans primarily focuses on the final factor in *Graham*. (D.E. 69-1 at PageID 240-42.) Specifically, he depends on video footage of the incident along with his deposition testimony to conclude that despite the severity of Plaintiff's injuries, his use of force was reasonable given Mosier's active resistance. As well, but for Mosier's strap breaking, the officer maintains he would have taken Mosier "to the ground in a controlled manner." (*Id.* at PageID 241; D.E. 93.)

To support his claim that Defendant's force was unreasonable, Plaintiff references three decisions, each of which Evans likewise relies on in support of qualified immunity. In *Davis v. City of East Cleveland*, the district court concluded that "[r]estraining a detainee by bringing him to the ground so as to reduce any danger posed by him" during an altercation with another detainee was reasonable. No. 1:03 CV 2075, 2006 WL 753129, at *10 (N.D. Ohio Mar. 22, 2006). In that same case, however, the court found excessive force was used where an officer kicked the arrestee after he stopped resisting. *Id.* at *5-6. In *Rudlaff v. Gillispie*, officers employed a knee strike and tased the arrestee after he refused to comply with officers' orders to be handcuffed and repeatedly swung away from officers. 791 F.3d 638, 640-41 (6th Cir. 2015). The Sixth Circuit held in part that "[w]hen a suspect actively resists arrest, the police can use a taser (or a knee strike) to subdue him; but when a suspect does not resist, or has stopped resisting, they cannot." *Id.* at 642. Finally, in *Standifer v. Lacon*, the Sixth Circuit affirmed a lower court's finding that an officer's

9

"takedown" of an arrestee that resulted in a broken neck was reasonable given the substantial risk of self-harm the plaintiff posed to herself, her assault of the arresting officer and her active resistance to arrest.  587 F. App'x 919, 924-25 (6th Cir. 2014).

Still, the Sixth Circuit recently determined that "the use of a takedown maneuver, in a variety of scenarios, can amount to excessive force." *LaPlante v. City of Battle Creek*, 30 F.4th 572, 581 (6th Cir. 2022).  Excessive force was found when an officer used such a maneuver on an arrestee who was already subdued or where no resistance was offered.  *Id.* (citing *McCaig v. Raber*, 515 F. App'x 551 (6th Cir. 2013), *Pershell v. Cook*, 430 F. App'x 410 (6th Cir. 2011), and *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) as other examples).  Moreover, the Sixth Circuit has concluded takedowns can be unreasonable even when used against an actively resisting detainee.  In *Lawler v. City of Taylor*, the plaintiff, after his arrest for driving while intoxicated, offered slight resistance by cursing at police and repeatedly raising his arm in defiance of efforts to process him at the police station.  268 F. App'x 384, 385-86 (6th Cir. 2008).  Video of the incident showed a police officer, Toro, tackle Lawler, who was not handcuffed, face-first into the ground and strike him twice with his knee and once with his elbow.  *Id.* at 386.  Affirming the district court, the Sixth Circuit held, "[n]o doubt, Lawler's words and actions permitted Toro to use *some* force to compel Lawler's cooperation. But the Fourth Amendment governs more than just '*when*' force may be applied; it also governs '*how* [that force] is carried out.'" *Id.* at 387 (quoting *Graham*, 490 U.S. at 395).  Applying the *Graham* factors, the appellate court concluded that despite his active resistance, a "jury fairly could find that Lawler never posed a threat to Toro's safety" rendering Toro's tackle, knee strikes, and elbow strike unreasonable.  *Id.*  Similarly, in *Merithew*, a police officer, Amore, "utilized an arm-bar takedown to thrust Merithew to the floor

10

face first" after the plaintiff resisted being searched while inside the booking area. *Merithew v. Amore*, 417 F. App'x 494, 495-96 (6th Cir. 2011). The plaintiff, who was handcuffed and appeared "intoxicated and belligerent," suffered multiple facial and head injuries. *Id.* The Sixth Circuit, finding that the reasonableness of the officer's actions was a question for the jury, held that

> [v]iewing the record in the light most favorable to Meirthew, Amore utilized the arm-bar takedown when plaintiff was unarmed, handcuffed, surrounded by police officers, physically restrained, and located in the secure confines of a police station. While she was non-compliant in refusing to spread her feet, a reasonable jury could find that Meirthew posed no danger and the use of the arm-bar takedown was unreasonable under the circumstances.

*Id.* at 497.

Here, the first *Graham* factor, the severity of the crime at issue, favors Plaintiff. Evans arrested Mosier for public intoxication, a nonviolent offense. (D.E. 83-7.) The Sixth Circuit has repeatedly held that driving while intoxicated, while serious, is "not a severe offense" for excessive force purposes. *Laury v. Rodriguez*, 659 F. App'x 837, 843 (6th Cir. 2016); *see also, e.g.*, *Williams v. Godby*, 732 F. App'x 418, 424 (6th Cir. 2018); *Stanfield v. City of Lima*, 727 F. App'x 841, 846 (6th Cir. 2018). The second *Graham* factor, whether the suspect posed an immediate threat to the officer, is close but favors Mosier.[2] The video shows Plaintiff, who was handcuffed, pull away from Evans and scream at him while being escorted into the booking area. (D.E. 70 at 00:07:48.) According to the officer's testimony, as Mosier pulled away from him, he became concerned that Plaintiff might kick him. (D.E. 69-3 at PageID 113.) The arrestee counters that he pulled away from Evans because he "[j]ust didn't want to go to jail." (D.E. 82-6 at PageID 709.) Considering

---

[2] The second *Graham* factor typically involves assessing the risk posed by the arrestee to civilians. *See Shumate*, 44 F.4th at 443 n.7. Applying the segmenting rule, Defendants present no argument regarding any danger by Plaintiff to others in the moments immediately preceding the use of force.

what the video reflects and viewing the facts in the light most favorable to Mosier, a reasonable jury could find that he did not pose an immediate threat to Evans as he was unarmed, handcuffed, inside a secure booking area, and in the same area where another correctional officer was standing. (D.E. 70 at 00:07:49); *see Merithew*, 417 F. App'x at 497 (finding an intoxicated and belligerent arrestee who "was unarmed, handcuffed, and surrounded by police officers" did not pose an immediate threat). The third *Graham* factor, whether the suspect was actively resisting, which Plaintiff does not dispute, undoubtedly favors Evans. (D.E. 82-1 at PageID 432.)

Other factors announced in *Kingsley* have also been considered in this analysis including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; [and] any effort made by the officer to temper or to limit the amount of force . . . ." *Harris v. Langley*, 647 F. App'x 585, 589 (6th Cir. 2016) (quoting *Kingsley*, 576 U.S. at 397.) As a result of this incident, Mosier suffered severe injuries including multiple facial bone fractures, intervertebral disc ligament tears and disc fractures resulting in sixteen days in the hospital, two spinal surgeries, and months of out-patient care. (D.E. 82 at PageID 417; D.E. 82-9 at PageID 774-75.) Additionally, although Evans did not tell Mosier that he planned to use a takedown maneuver, he asserts that the action involved less force than using a taser which would have been excessive under the circumstances. (D.E. 83-3 at PageID 1054-55). Thus, the officer insists that his attempted takedown was used in an effort to reduce the force involved.

The parties disagree as to whether Mosier's injuries were the result of his clothing strap unexpectedly breaking during the attempted takedown or whether Evans purposefully slung Mosier to the ground. A takedown is, as the officer maintains, a maneuver frequently employed by police to gain control of a belligerent and intoxicated individual. As discussed, several

examples of successful takedowns have been found not to be excessive force.  Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Parker v. Henderson Cnty.*, 450 F. Supp. 2d 842, 854 (W.D. Tenn. 2006) (quoting *Graham*, 490 U.S. at 396).  However, at the summary judgment stage, "[t]o the extent that facts shown in videos can be interpreted in multiple ways . . . , such facts should be viewed in the light most favorable to the non-moving party." *Latits*, 878 F.3d at 547.  Considering the video herein, Evans's use of force can reasonably be seen either as a failed attempted takedown or an intentional swinging to the ground in violation of the Fourth Amendment.  (D.E. 70 at 00:07:49.) Given that the video is inconclusive on this issue, and the non-moving party maintains that Evans intentionally threw him to the ground, the Court concludes that whether Evans's use of force was a constitutional violation is an issue of material fact for the jury to decide.

> b.  *Clearly Established*

Even with the Court's conclusion above, in order to defeat qualified immunity, Mosier must also establish that the use of force "amounted to a violation of [his] clearly established rights . . . ." *Shumate*, 44 F.4th at 449.   "A government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Indeed, "'the salient question' in evaluating the clearly established prong is whether officials had 'fair warning' that their conduct was unconstitutional." *Guertin v. State*, 912 F.3d 907, 932 (6th Cir. 2019) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).  To prove such fair warning, courts "look first to decisions of the Supreme Court, then to decisions of" their circuit and "[p]laintiffs must generally identify a case

with a fact pattern similar enough to have given" such fair warning. *Id.* (quoting *Baker v. City of Hamilton*, 471 F.3d 601, 606 (6th Cir. 2006)).  This does not mean that Plaintiff must produce a case "directly on point" to the present facts, however, "existing precedent must have placed the . . . constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021) (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017)).

As both parties acknowledge, Mosier "had a clearly established right to be free from excessive force." *Shumate*, 44 F.4th at 449 (quoting *Palma v. Johns*, 27 F.4th 419, 442 (6th Cir. 2022)); (*see* D.E. 69-1 at PageID 242; D.E. 82 at PageID 406.)  While the right to be free from excessive force is broadly known, "the right at issue is not defined at such 'a high level of generality.'" *Shumate*, 44 F.4th at 449 (quoting *Palma*, 27 F.4th at 442).  Furthermore, "excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam)).  As the Sixth Circuit has stated, "it defeats the qualified-immunity analysis to define the right too broadly (as the right to be free from excessive force), [and] it defeats the purpose of § 1983 to define the right too narrowly (as the right to be free of needless assaults by left-handed police officers during Tuesday siestas)." *Hagans v. Franklin Cnty. Sheriff's Off.*, 695 F.3d 505, 508-09 (6th Cir. 2012).  Thus, the constitutional question Plaintiff must answer is whether it was clearly established in March 2019 that the use of excessive force was involved for an officer, in order to regain control, to sling a handcuffed arrestee who was actively and combatively resisting to the ground.[3] The answer to this question is no.

------

[3] As discussed in the preceding section, the Court adopts Plaintiff's characterization of

Plaintiff first points to three cases, without elaboration, for the proposition that "there is no question that a takedown that is unnecessary or more severe than necessary is a clearly established constitutional violation." (D.E. 82 at PageID 414.)   In *Coble v. City of White House*, the Sixth Circuit reversed the lower court holding that an audio recording that captured pieces of the alleged excessive force at issue did not "blatantly contradict[]" the plaintiff's version of the facts.   634 F.3d 865, 869 (6th Cir. 2011).   Although the officer performed a takedown, the challenged force occurred after the plaintiff was handcuffed and "did not offer any further resistance." *Id.* at 866. Mosier next references *Byrne v. Bero* and *Krusell v. Hunt*, two unreported district court cases.   In *Byrne*, the court denied qualified immunity to the six-foot-six-inch male officer who threw the five-foot-five-inch sixteen-year-old female plaintiff to the ground, holding that his actions violated clearly established law in light of the plaintiff's lack of resistance. No. CIV. 13-15118, 2015 WL 3476956, at *5, 8 (E.D. Mich. June 2, 2015).   In *Krusell*, the court denied the defendant officer's motion for summary judgment regarding alleged excessive force in violation of a prisoner's Eight Amendment rights.   *Krusell v. Hunt*, No. 1:15-CV-1159, 2017 WL 7310114, at *8 (W.D. Mich. Dec. 27, 2017), report and recommendation adopted, No. 1:15-CV-1159, 2018 WL 659767 (W.D. Mich. Feb. 1, 2018). The court held that the officer had "fail[ed] to address qualified immunity regarding the takedown viewing the facts in the light most favorable to plaintiff" where the plaintiff argued that he was not resisting. *Id.*   None of these cases support Plaintiff's broad contention that an "unnecessary" takedown is a "clearly established constitutional violation."   Instead, they each

---

Evans's actions as slinging rather than a controlled takedown because at the summary judgment stage, facts and inconclusive videos must be viewed in the light most favorable to the non-moving party. *See Shumate*, 44 F.4th at 438. Indeed, "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts" unless video "quite clearly contradicts the version of the story told by" the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

reaffirm what was discussed above: the use of a takedown maneuver on a *nonresistant* arrestee or prisoner is a violation of that person's right to be free from excessive force.

Next, in support of the same proposition, Plaintiff cites *Standifer v. Lacon*. (D.E. 82 at PageID 412-14.) There, as discussed above, the Sixth Circuit affirmed the reasonableness of a takedown given the arrestee's potential for self-harm, assault of police officers, and active resistance. 587 F. App'x at 924-25. The *Standifer* court also noted, as Plaintiff highlights, that the officer "did not slam, shove, or throw Standifer to the ground; at most he guided her down" suggesting that slamming, shoving, or throwing may have been constitutionally impermissible. *Id.* at 924. Defendant argues that despite this language from *Standifer*, Evans intended to guide Mosier to the ground without harming him. (D.E. 93 at PageID 2114.)   However, "under the Fourth Amendment," this Court considers "the reasonableness of the force in light of the totality of the circumstances confronting the defendants, and not . . . the underlying intent or motivation of the defendants." *Burgess*, 735 F.3d at 472. Still, although *Standifer* suggests that slamming, shoving, or throwing an actively resisting arrestee may be unreasonable in certain contexts, that is not the holding nor does the court affirmatively adopt that conclusion. Therefore, *Standifer* does not clearly establish what Plaintiff alleges it does. (D.E. 82 at PageID 412-13.)

Both parties also rely on *Burnett v. Griffith*, 33 F.4th 907 (6th Cir. 2022). (D.E. 69-1 at PageID 243-45; D.E. 82 at PageID 415-18.)  Defendant argues that, despite *Burnett* involving an Eighth Amendment excessive force claim, "its holding on qualified immunity is relevant" because, given its factual similarities with the present case and the Sixth Circuit's discussion of caselaw, "[n]o case precedent would have placed Evans on notice that" his actions violated Mosier's constitutional rights.  (D.E. 69-1 at PageID 244.)   In contrast, Plaintiff highlights factual

16

differences between *Burnett* and this case including how officers threw the detainee to the floor, the lack of intoxication in *Burnett*, and the less severe injuries in *Burnett*.  (D.E. 82 at PageID 415-17.)  Ultimately, *Burnett* is helpful to understand how the Sixth Circuit views the constitutionality of an officer performing a takedown of an actively resisting detainee albeit in an Eighth Amendment context.  Still, because the case was decided well after the incident at issue here and because its holding involves a markedly different analysis for the underlying constitutional violation, its applicability to the clearly established prong is limited.[4]

Mosier relies most heavily on *Lawler v. Taylor* arguing that the case "clearly establish[es] that when an unnecessary amount of force is utilized when taking a detainee to the ground, that it is a Fourth Amendment violation."  (D.E. 82 at PageID 415.)  Although *Lawler*, as discussed in the previous section, is helpful for determining whether Evans violated Plaintiff's Fourth Amendment rights, the facts of *Lawler* do not "'squarely govern[]' the specific facts at issue" here. *Kisela*, 138 S. Ct. at 1153 (quoting *Mullenix*, 577 U.S. at 13).  Like Lawler, Mosier was intoxicated inside of the booking area and refused to comply with the arresting officer's instructions.  *Lawler*, 268 F. App'x at 386.  However, Mosier's resistance was more significant than Lawler's, who gestured with his hands, called the arresting officer a "pussy," and "raised his left arm slightly" before the officer took him face-first to the ground.  *Id.*  Mosier forcibly jerked away from Evans,

---

[4] "[T]he Eighth Amendment's ban on cruel and unusual punishment bars excessive force against convicted persons."  *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (citing *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986)).  To prove an Eighth Amendment violation in the qualified immunity context, the plaintiff must satisfy both an "objective component and a subjective component" unlike the Fourth Amendment's reasonableness test.  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citation omitted).  Importantly, the Supreme Court has rejected the "notion that all excessive force claims brought under § 1983 are governed by a single generic standard."  *Graham*, 490 U.S. at 393.

screamed at him, and presented at least some threat.  (D.E. 70 at 00:07:49.)  The *Lawler* court affirmed the denial of qualified immunity holding that "our cases clearly established Lawler's right to be free from gratuitous force during booking."  *Lawler*, 268 F. App'x at 388 (citing *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002)).  *Phelps*, like *Lawler*, involved a plaintiff who offered slight, if any, resistance while being booked for violation of an open container ordinance before an officer tackled him to the floor.  *Phelps*, 286 F.3d at 297.  Thus, *Lawler* expands what *Phelps* established: detainees who offer no or minimal resistance during booking have a clearly established right not to be tackled or thrown to the ground.

Finally, Plaintiff cites *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Robinette v. Barnes*, 854 F.2d 909 (6th Cir. 1988), without elaboration, for the proposition that "the law was clearly established that an officer may not employ force which he knows to create a substantial risk of causing serious bodily injury unless the suspect poses a threat of serious bodily harm."  (D.E. 82 at PageID 418.)  In *Garner*, the Supreme Court held that using deadly force on a fleeing suspect who poses "no immediate threat to the officer and no threat to others" is unreasonable.  471 U.S. at 11.  The Sixth Circuit concluded, in *Robinette*, that despite the death of the suspect, the use of a properly trained police dog to apprehend a burglary suspect is not "deadly force" and that even if it were, the utilization of the canine in Robinette's context "was not unreasonable under the circumstances."  854 F.2d at 913.  Therefore, Plaintiff mischaracterizes the holdings of both cases, each of which considered when deadly force used by officers is reasonable.  Additionally, "the right at issue is not defined at such 'a high level of generality'" as suggested by Plaintiff's proposition.  *Shumate*, 44 F.4th at 449 (quoting *Palma*, 27 F.4th at 442).

Ultimately, the cases Plaintiff relies on do not place the "constitutional question" —

whether it is excessive force for an officer to sling a handcuffed arrestee who is actively and significantly resisting to the ground to regain control — "beyond debate." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7-8 (2021). Indeed, while Evans's actions may have amounted to a violation of Mosier's constitutional rights, Plaintiff fails to cite precedent demonstrating that Evans "was on 'notice that his specific conduct was unlawful'" at the time of the incident. *Shumate*, 44 F.4th at 450 (quoting *Rivas-Villegas*, 142 S. Ct. at 8). Therefore, because Mosier does not meet his burden on the clearly established prong, Evans is entitled to qualified immunity on the Fourth Amendment claim. Thus, the § 1983 Fourth Amendment assertion against Evans is DISMISSED.

### c.  *Adequate Medical Care*

Mosier makes an additional § 1983 claim arguing that Evans denied him the "right to adequate correctional care . . . ." (D.E. 1-2 at PageID 14; D.E. 82 at PageID 420-21.) Defendant avers that he did not violate Plaintiff's constitutional rights and, that even if he was found to have violated such rights, Defendant is entitled to qualified immunity as there is no precedent that would have provided him with fair notice that his actions violated Plaintiff's rights. (D.E. 69-1.)

Unlike Mosier's excessive force claim, "there is no Fourth Amendment right to medical care" for those arrested without a warrant and before a probable cause hearing. *Colson v. City of Alcoa*, 37 F.4th 1182, 1189 (6th Cir. 2022). Instead, the Fourteenth Amendment "create[s] a substantive due process right to certain medical care for those in the government's custody." *Id.* at 1187 (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989)). Specifically, Mosier, a pre-trial detainee, had a "constitutional right to be free from deliberate indifference to serious medical needs . . . ." *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022). The Sixth Circuit recently defined the "three elements for an inadequate-medical-care

claim under the Fourteenth Amendment" that a plaintiff must satisfy. *Trozzi v. Lake Cnty.*, 29

F.4th 745, 757 (6th Cir. 2022).   To survive summary judgment, Mosier must present evidence

from which a reasonable jury could find

> (1) the plaintiff has an objectively serious medical need; (2) a reasonable officer
> at the scene (knowing what the particular jail official knew at the time of the
> incident) would have understood that the detainee's medical needs subjected
> the detainee to an excessive risk of harm; and (3) the prison official knew that
> his failure to respond would pose a serious risk to the pretrial detainee and
> ignored that risk.

*Id.* at 757-58.[5]

Neither party makes an argument regarding the severity of Mosier's medical needs, which

undoubtedly appeared objectively serious at the time of the incident. *See Greene*, 22 F.4th at 607

(quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) ("A serious medical need is one 'that

has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention.'")  Instead, Plaintiff alleges

that Defendant satisfied the second and third elements of the above standard because "Mosier was

left to suffer from his severe injuries for over nine minutes before receiving any medical attention."

(D.E. 82 at PageID 421.)  Defendant notes, however, that he immediately responded to Plaintiff's

injury and sought medical assistance.  (D.E. 69-1 at PageID 247.)  Indeed, Evans can be heard

instructing other officers present to "get a medic" within twenty seconds of Mosier hitting the

floor.  (D.E. 70 at 00:08:11.)  Furthermore, as both the video and the undisputed facts in the record

---

[5] Defendant cites *Brawner v. Scott County*, 14 F.4th 585 (6th Cir. 2022) and Plaintiff
references *Greene v. Crawford County*, 22 F.4th 593 (6th Cir. 2022) for a similar recitation of this
test.  (D.E. 69-1 at PageID 247; D.E. 82 at PageID 421.)  The *Trozzi* court, however, read "*Farmer*,
*Kingsley*, *Brawner*, and *Greene* together" to develop the cited test above which it calls the
"*Farmer-Brawner* test."  *Trozzi*, 29 F.4th at 757-58.  Therefore, the Court applies the *Farmer-Brawner* test.

show, Evans took additional measures to mitigate the risk of further injury to Mosier by removing his handcuffs, wiping blood from his face, assisting the paramedics, and requesting transport to a hospital for treatment. (D.E. 70 at 00:08:06-00:47:50; 82-1 at PageID 437-39.)

Plaintiff fails to point to any facts suggesting that Defendant intentionally or recklessly failed to act to mitigate the risk posed to him.  Viewing the facts reflected in the video and in the light most favorable to Mosier, no reasonable jury could find that Defendant ignored the injuries sustained by Plaintiff.  *See Greene*, 22 F.4th at 610-14 (affirming denial of summary judgment to officers who failed to seek emergency medical care for the detainee).  Therefore, Plaintiff fails to meet his burden under *Trozzi* to survive summary judgment.  Furthermore, he presents no argument regarding Defendant's assertion of qualified immunity.  Thus, Plaintiff's § 1983 Fourteenth Amendment claim is DISMISSED.

2. Claims Against Crockett County

To prevail against a municipality on a § 1983 claim, Mosier cannot rely on a *respondeat superior* analysis and Crockett County (the "County") may be held "liable 'only for [its] *own* illegal acts.'"  *Gambrel v. Knox Cnty.*, 25 F.4th 391, 408 (6th Cir. 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)).  Plaintiff must "connect [Defendant's] conduct to a municipal 'policy' or 'custom.'"  *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  He can establish this connection by proving "that the municipality's deliberate conduct 'was the moving force behind the injury alleged.'"  *Young v. Campbell Cnty.*, 846 F. App'x 314, 329 (6th Cir. 2021) (quoting *Brown*, 520 U.S. at 404).  "A plaintiff can show the existence of a municipal policy, practice, or custom by identifying: '(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of

21

inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.'" *Id.* (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). Importantly, "[i]f no constitutional violation by the individual defendant[] is established, the municipal defendant[] cannot be held liable under § 1983." *Stanfield v. City of Lima*, 727 F. App'x 841, 851 (6th Cir. 2018) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001)).  Having found that Evans did not fail to provide adequate medical care in violation of Mosier's Fourteenth Amendment rights, the only potential constitutional violation is Defendant's alleged excessive force in violation of the Fourth Amendment.

Mosier thus argues that Crockett County (1) maintained express policies that were the moving force behind Evans's alleged excessive force; (2) provided inadequate training for handling intoxicated individuals that resulted in excessive force; and (3) ratified Evans's conduct by not conducting a full investigation of the incident.  (D.E. 82 at Page ID 421-26.)  In each argument, however, Plaintiff has not presented any facts from which a jury could reasonably find that Crockett County had a policy, practice, or custom that was the moving force behind Evans's alleged excessive force. Plaintiff thus fails to establish municipal liability. *See e.g.*, *Gambrel*, 25 F.4th at 408 (quoting *Brown*, 520 U.S. at 405, 415) (holding that the plaintiff "cannot meet the 'rigorous standards of culpability and causation' that govern" a failure to train claim); *Young*, 846 F. App'x at 329-31 (finding the plaintiff failed to prove that the county's deliberate conduct was the moving force behind the alleged injury when arguing that express policies and a failure to investigate were such deliberate conduct).

     *a.   Official Policy or Custom*

Mosier references several alleged policies that were the moving force behind Evans's

actions.  First, he argues that the County's "policy of not requiring officers to wait for available assistance is a direct cause of Mr. Mosier's injuries . . . ." (D.E. 82 at PageID 423.)  Beyond this conclusory statement, however, Plaintiff fails to provide any evidence that such a policy existed or that it contributed to Defendant's alleged excessive force.  *See Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is insufficient 'for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'").  Next, Plaintiff suggests that the County "had a policy of failing to conduct a meaningful background check when hiring deputies." (D.E. 82 at PageID 423.)  Again, his allegation is bereft of citation, legal or factual, that supports finding that such a policy was the moving force behind any excessive force.  (D.E. 93 at PageID 2118.)

Finally, the arrestee states that the "County had a policy of requiring a single officer to escort highly intoxicated arrestees into the jail," (D.E. 82 at PageID 423), and only cites to Sheriff Neal Klyce's deposition testimony in an effort to show that the County had such a policy.  (*Id.* at PageID 422; D.E. 82-3 at PageID 533-34.)[6]  "An express policy can be unconstitutional in two ways: '(1) facially unconstitutional as written or articulated, or (2) facially constitutional but consistently implemented to result in constitutional violations with explicit or implicit ratification by city policymakers.'"  *Young*, 846 F. App'x at 330 (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).  Plaintiff does not provide any factual evidence or legal citation to support a conclusion that this alleged policy was facially unconstitutional.  Furthermore, other than the present incident, Mosier offers no examples of this policy being "consistently implemented to

---

[6] Plaintiff also alleges that "the County had an unconstitutional policy of providing inadequate training and a policy of failing to conduct meaningful investigations of serious injuries occurring in its jail."  Both alleged policies are addressed in separate sections below.

result in constitutional violations . . . ." *Id.* Still, it is possible for a "single act by a policymaker with final policymaking authority [to] sustain a municipal-liability claim." *Id.* at 331. However, Plaintiff cites no evidence that Evans possessed "final policymaking authority" nor demonstrated that Defendant "made a 'deliberate choice to follow a course of action . . . from among various alternatives.'" *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Thus, Plaintiff has failed to identify any express policy that a reasonable jury could determine was the moving force behind any Fourth Amendment violation.

   *b. Failure to Train*[7]

   Mosier insists that Crockett County failed to adequately train its officers in handling intoxicated arrestees and that this failure resulted in the harm to Plaintiff. (D.E. 1-2 at PageID 16; D.E. 82 at PageID 422.) To succeed on a failure to train claim, Mosier must show: "(1) the [County's] training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the [County's] deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)). According to

---

[7] In addition to arguing that the County failed to adequately train Evans, Plaintiff states that "Evans was not properly supervised . . . ." (D.E. 82 at PageID 422). Other than this statement, Mosier offers no basis or other argument to support this assertion. Although the Sixth Circuit acknowledges that failure-to-train claims are distinct from failure-to-supervise claims, it notes that the "'failure to supervise' theory of municipal liability is a rare one.'" *Amerson v. Waterford Tp.*, 562 F. App'x 484, 491 (6th Cir. 2014) (quoting *Mize v. Tedford*, 375 F. App'x 497, 500 (6th Cir. 2010)). Still, the two claims are generally analyzed using a similar framework where "a plaintiff must prove that the [County]'s flawed supervision was the 'moving force' behind the unconstitutional conduct and that the [County] was deliberately indifferent to the 'known or obvious' constitutional violations that would result." *Pecsi v. City of Niles*, 674 F. App'x 544, 547 (6th Cir. 2017) (internal citations omitted). Because Plaintiff provides no support for the alleged failure-to-supervise claim, this claim fails.

the County, however, all Crockett County law enforcement deputies, including Evans, received use-of-force training that complied with Tennessee Peace Officers Standards and Training Commission ("POST") standards. (D.E. 69-1 at PageID 250; D.E. 69-7 at PageID 363-64.) This Court has consistently found trainings approved by POST, "a state regulatory body," to be constitutionally sound and adequate. *Malone v. City of Memphis*, No. 2:18-CV-2201-MSN-TMP, 2021 WL 1040388, at *6 (W.D. Tenn. Mar. 5, 2021), *aff'd sub nom. Malone v. Shelby Cnty.*, No. 21-5246, 2021 WL 7540285 (6th Cir. Dec. 10, 2021); *see, e.g.*, *Humphrey v. Friar*, No. 2:17-CV-02741-SHL-DKV, 2018 WL 8807154, at *14 (W.D. Tenn. Sept. 28, 2018), *aff'd in part, rev'd in part and remanded*, 792 F. App'x 395 (6th Cir. 2020); *Glassburn v. Weakley Cnty.*, No. 1:12-CV-1107-JDB-EGB, 2013 WL 4039047, at *6 (W.D. Tenn. Aug. 7, 2013); *Parker v. Henderson Cnty.*, 450 F. Supp. 2d 842, 851-52 (W.D. Tenn. 2006).

It is, however, not Defendants' burden to show that the training was adequate, but Plaintiff's burden to show that the training was inadequate. *Harvey v. Campbell Cnty*, 453 F. App'x 557, 566 (6th Cir. 2011). Mosier fails to meet this burden offering instead that "the County failed to have clear training programs guiding deputies on how to handle intoxicated individuals" and points to the report prepared by his own expert, Patrick Looper, for support. (D.E. 82 at PageID 422.) In his report, Looper states that the "training and supervision provided to deputies by the Crockett County Sheriff's Department were woefully inadequate and inappropriate." (D.E. 82-8 at PageID 763.) He does not, however, point to any evidence suggesting that the POST-compliant trainings that concerned use of force were inadequate. Instead, Plaintiff describes Sherriff Klyce's sworn declaration[8] as a "self-serving unsworn declaration bragging about [the

---

[8] A sworn statement, or declaration, is one that is "given under oath[.]" *Sworn Statement*,

25

County's] training" and alleges only that there are "numerous factual disputes as to the training jail employees received" without providing any evidence of those disputes.  (D.E. 82 at PageID 422.)  Although this Court is obligated to view the facts in the light most favorable to Plaintiff, that "does not require or permit us to accept as true mere allegations that are not supported by factual evidence."  *Harvey*, 453 F. App'x at 565.  "For lack of evidence of inadequate training alone, defendants are entitled to summary judgment" on this claim. *Id.* at 567.

Still, Plaintiff fails to make any showing that Crockett County's alleged failure to train "amount[s] to 'deliberate indifference to [his] rights . . . ." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Jackson*, 925 F.3d at 836 (quoting *Brown*, 520 U.S. at 410).  Deliberate indifference may be shown by either

> "(1) 'prior instances of unconstitutional conduct demonstrating that the [County] had notice that the training was deficient and likely to cause injury but ignored it' or (2) 'evidence of a single violation of federal rights, accompanied by a showing that the [County] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'"

*Id.* (quoting *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2004)).  Mosier provides no evidence of any prior instance of unconstitutional conduct that would have put Crockett County on notice that the required POST-compliant training was deficient and likely to cause injury.

The single violation theory "is available 'in a narrow range of circumstances' where federal rights violation 'may be a highly predictable consequence of a failure to equip [employees] with

_____

Black's Law Dictionary (11th ed. 2019).  Because Sherriff Klyce signed his declaration "under penalty of perjury," his statement was given under oath and is therefore a sworn statement.

specific tools to handle recurring situations.'" *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 739 (6th Cir. 2015) (quoting *Brown*, 520 U.S. at 409). Plaintiff "must show 'a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Harvey*, 453 F. App'x at 567 (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)). Importantly, "mere allegations that an officer was improperly trained or that an injury could have been avoided with better training are insufficient to make out deliberate indifference." *Id.* at 563 (citation omitted). The parties agree that the County provided training in accordance with POST standards. (D.E. 82-1 at PageID 440-41.) Mosier simply insists that the provided training was insufficient and that his injury could have been avoided with better training. (D.E. 82 at PageID 422.) Plaintiff thus fails to meet the stringent standard of deliberate indifference.

Finally, Mosier provides no evidence that the training Evans received regarding use of force was so inadequate that it was the actual cause of Mosier's injuries. He again merely relies on a single allegation from his expert's report that the County "failed to provide Deputy Evans with the appropriate training and supervision that would have prevented Evans from utilizing" excessive force. (*Id.* at PageID 422-23.) Thus, Mosier fails to establish the final requirement of his failure to train theory. *See Jackson*, 925 F.3d at 834.

### c. *Ratification*

A plaintiff may also establish the existence of an official policy or custom by demonstrating that "an official with final decision-making authority ratified illegal actions . . . ." *Wiley v. City of Columbus*, 36 F.4th 661, 670 (6th Cir. 2022) (quoting *Burgess*, 735 F.3d at 478). Specifically, "a municipality can be liable for a decision made by a subordinate if the decision was ratified by a

final policymaker." *Goza v. Memphis Light, Gas & Water Div.*, 398 F. Supp. 3d 303, 313 (W.D. Tenn. 2019) (quoting *Arnold v. City of Columbus*, 515 F. App'x 524, 538 (6th Cir. 2013)). Ratification may be established by proving an "inadequate investigation" which requires "'not only an inadequate investigation in this instance,' but also 'a clear and persistent pattern of violations' in earlier instances." *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 495 (6th Cir. 2020) (quoting *David v. City of Bellevue*, 706 F. App'x 847, 853 (6th Cir. 2017)). Indeed "[t]o protect against *respondeat superior* liability, the Supreme Court has held that § 1983 imposes a 'rigorous' causation standard where, as here, a plaintiff seeks to hold a local entity liable for its employee's actions." *Id.* (quoting *Brown*, 520 U.S. at 405). Thus, for Mosier to prevail, "there must be multiple earlier inadequate investigations and they must concern comparable claims." *Id.* (quoting *Stewart v. City of Memphis*, 788 F. App'x 341, 344 (6th Cir. 2019)).

Plaintiff argues that Sheriff Klyce was a final policymaker whose investigation into the incident was so cursory and inadequate that it amounted to ratification. (D.E. 82 at PageID 424-26.) To demonstrate the inadequacy, he states that Officer Young was never interviewed, Evans "was never asked to fill out a use of force form," and Klyce placed Lieutenant Mosier, Plaintiff's first cousin, in charge of the investigation. (*Id.*) Beyond the allegations of this investigation, Mosier fails to demonstrate a clear and persistent pattern of violations in earlier instances concerning comparable claims. Thus, he is unable to prove ratification by inadequate investigation. Because he fails to provide sufficient facts to support a jury finding of an official policy or custom that was the moving force behind Defendant's alleged constitutional violation, the municipal liability claims are DISMISSED.

28

3.  Plaintiff's State Claims

Plaintiff makes two state law intentional tort claims against Evans alleging that he committed both a civil assault and the tort of intentional infliction of emotional distress.  (D.E. 1-2 at PageID 15; 82 at PageID 426-27.)  Title 28 U.S.C. § 1367 provides that a district court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As all of Plaintiff's federal claims have been terminated, his state claims are DISMISSED without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED and the claims of the Plaintiff are DISMISSED. Dismissal of his claims under state law is without prejudice. The Clerk is DIRECTED to enter judgment for the Defendants and remove all settings from the Court's calendar in this matter.


IT IS SO ORDERED this 17th day of February 2023.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE